**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Maura D. Corrigan    Michael F. Cavanagh
                     Elizabeth A. Weaver
                     Marilyn Kelly
                     Clifford W. Taylor
                     Robert P. Young, Jr.
                     Stephen J. Markman

**FILED JULY 29, 2004**

MARTIN B. BREIGHNER III and
KATHRYN BREIGHNER,

    Plaintiffs-Appellants,

v                     No. 123529

MICHIGAN HIGH SCHOOL ATHLETIC
ASSOCIATION, INC.,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

At issue in this case is whether defendant Michigan High School Athletic Association, Inc. (MHSAA), a private, nonprofit entity that organizes and supervises interscholastic athletic events for its voluntary members, is a "public body" as that term is defined at MCL 15.232(d) of the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. Plaintiffs contend that the MHSAA is a public body within the meaning of the FOIA because (1) it is "primarily funded by or through state or local

authority," MCL 15.232(d)(iv); (2) it is "created by state or local authority," MCL 15.232(d)(iv); and (3) it is an "agency" of a school district, MCL 15.232(d)(iii).

The trial court held that the MHSAA was "primarily funded by or through state or local authority" and that it was therefore subject to the FOIA as a public body under § 232(d)(iv). The Court of Appeals reversed, concluding that neither § 232(d)(iv) nor § 232(d)(iii) applied to the MHSAA. Because we agree that the MHSAA does not qualify as a public body under § 232(d)(iii) or (iv), we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. THE MHSAA

The MHSAA was originally founded in 1924 to exercise control over the interscholastic athletic activities of all public schools in the state through agreement with the State Superintendent of Public Instruction. The MHSAA was housed within the Michigan Department of Education, and its handbook, rules, and regulations were part of the Administrative Code of the state of Michigan.

In 1972, the MHSAA became an incorporated, nonprofit membership organization. In that year, the Legislature transferred control of interscholastic athletics from the State Board of Education to the individual school boards,

2

but retained the status of the MHSAA as the official association of the state. See MCL 340.379 (repealed by 1976 PA 451, § 1851); MCL 380.1289 (before its amendment by 1995 PA 289, § 1); MCL 380.1521 (repealed by 1995 PA 289, § 2).[1] In 1995, the Legislature adopted the Revised School Code, MCL 380.1 *et seq.*, which repealed and amended several statutes. Through the Revised School Code, the MHSAA was removed as the "official" organization overseeing interscholastic sports. Under MCL 380.11a(4), a school district's membership in any athletic organization remains entirely voluntary (school districts "*may . . .* join organizations as part of performing the functions of the school district" [emphasis supplied]).

---

[1] MCL 380.1289(1) provided, until 1995, that "[a] board of a school district . . . may join an organization, association, or league which has as its object the promotion and regulation of sport and athletic . . . contests . . . ." Section 1289(2) further provided:

> An association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools *shall be the official association of the state.* The association is responsible for the adoption and enforcement of regulations relative to eligibility of pupils in schools for participation in interscholastic athletic events, contests, or tournaments. [Emphasis supplied.]

The MHSAA is governed by a representative council made up of nineteen voting members, including fourteen members elected by member schools, four members appointed by the council, and one representative of the state superintendent of education. The council has control of interscholastic athletic policies, and a five-member executive committee makes rules necessary for the control and government of interschool activities.

The MHSAA regulates interscholastic athletic competition between member schools and sets standards for school membership and eligibility of students to participate in interscholastic athletics. Apparently, the vast majority of high schools in Michigan are members of the MHSAA. Approximately seven hundred Michigan high schools are members of the MHSAA and more than eighty percent of those schools are public. Member schools pay no membership dues and no tournament entry fees. The only funds collected from schools are (1) payments for the cost of publications provided to a school in excess of the quantity already provided to members and (2) meeting expenses (for example, the cost of lunch).

The majority——approximately ninety percent——of the MHSAA's revenues are gate receipts at post-season athletic

4

tournaments for football and basketball. The gate receipt revenues come directly from the sale of the MHSAA's tickets to members of the public who attend MHSAA-sponsored events. In some cases, the MHSAA itself does not sell the tickets, but member schools remit to the MHSAA gate receipts collected from tickets sold by the schools for the MHSAA-sponsored events.

Because no revenues are derived either during the regular season or from most of the tournaments sponsored by the MHSAA, the positive cash flow from the football and basketball tournaments is used to fund these other activities. Services provided by the MHSAA to its members include the provision of medical insurance for student-athletes; dissemination of play rule books; organization of meetings for coaches and officials; provision of several school and officials publications; provision of trophies and medals; training; direction and management of tournaments; and the services of the MHSAA staff.

## B. PLAINTIFFS' FOIA PROCEEDINGS

Plaintiffs are the parents of a high school student who was prohibited from participating in a ski meet sponsored by the MHSAA because he had previously participated in an unsanctioned event in violation of MHSAA

5

rules.  Plaintiffs filed a request under the FOIA seeking information related to that decision.  The MHSAA refused to comply with the request, asserting that it was not a public body and was therefore not subject to the FOIA.

The trial court granted summary disposition to plaintiffs, holding that the MHSAA is "primarily funded by or through state or local authority" within the meaning of § 232(d)(iv) because the vast majority of its funding comes from gate receipts at the athletic events it sponsors.  The trial court held that the gate receipts that comprised the majority of the MHSAA's revenue were received "through" the schools because the MHSAA essentially "'enjoys the schools' moneymaking capacity as its own,'" quoting *Brentwood Academy v Tennessee Secondary School Athletic Ass'n,* 531 US 288; 121 S Ct 924; 148 L Ed 2d 807 (2001).

The Court of Appeals reversed, holding that the MHSAA was not a public body under either § 232(d)(iv) or § 232(d)(iii).  255 Mich App 567, 581-582, 583; 662 NW2d 413 (2003).

The majority first addressed plaintiffs' argument that the MHSAA was "created by state or local authority" under § 232(d)(iv).  The majority held that, although it

6

was originally created under such authority, the modern incarnation of the MHSAA was a unique, private entity that had ceased being the official athletic association for the state. This unique entity was not "created" by state or local authority.

The majority further rejected the trial court's conclusion that the MHSAA is primarily funded by or through state or local authority. The panel noted that the state provides no financial resources to fund the MHSAA's activities, and that the MHSAA actually paid fees for the use of host facilities. Member schools pay no fees or dues to the MHSAA. The MHSAA is a private, nonprofit organization that hires and trains its own officials and pays its own employees; furthermore, its revenues are derived from the sale of its own tickets for its own events. The majority further noted that schools are not forced to join the MHSAA and that member schools voluntarily chose to engage the MHSAA's services. The individual schools have authority over their own interscholastic events and have no independent authority over the MHSAA.

Finally, the majority rejected plaintiffs' argument that the MHSAA is an "agent" of the state and therefore

7

subject to the FOIA under § 232(d)(iii). The majority looked to Black's Law Dictionary (7th ed), where "agency" was defined as "[a] fiduciary relationship created by express or implied contract or by law, in which one party (the *agent*) may act on behalf of another party (the *principal*) and bind that other party by words or actions." The majority further noted that, pursuant to *St Clair Intermediate School Dist v Intermediate Ed Ass'n*, 458 Mich 540, 558 n 18; 581 NW2d 707 (1998), "an agency relationship arises only where the principal 'has the right to control the conduct of the agent with respect to matters entrusted to him.'" (citations omitted). The majority held that the MHSAA was governed by its board of directors, not the individual schools who voluntarily became its members. No one school or district could control the MHSAA, because it was controlled by its own board. Therefore, the majority held, the MHSAA was not an "agent" of its member schools.

Judge Jansen dissented, opining that the public policy behind the FOIA favored disclosure and that the MHSAA was primarily funded by or through state or local authority because its gate receipts came to it only through or by means of the schools' authority to regulate

8

sporting events. Judge Jansen opined that the majority's holding was contrary to two cases, *State Defender Union Employees v Legal Aid & Defender Ass'n of Detroit,* 230 Mich App 426, 432; 584 NW2d 359 (1998), and *Kubick v Child & Family Services*, 171 Mich App 304; 429 NW2d 881 (1988), in which the Court of Appeals had held, respectively, that (1) "funded" for purposes of the FOIA definition of "public body" meant the receipt of a governmental grant or subsidy and (2) funding that amounted to less than half the total funding of a corporation did not amount to primary funding. Judge Jansen opined that the gate receipts remitted to the MHSAA were the functional equivalent of a grant or subsidy and that virtually the entire budget of the MHSAA came from gate receipts. Finally, Judge Jansen opined that the majority's holding was contrary to the Supreme Court's holding in *Brentwood* that the Tennessee Secondary School Athletic Association (TSSAA), an organization that is allegedly analogous to the MHSAA, was a state actor for Fourteenth Amendment purposes.

We granted plaintiffs' application for leave to appeal. 469 Mich 952 (2003).

9

## II. STANDARD OF REVIEW

This case involves questions of statutory interpretation, which are reviewed de novo. *Roberts v Mecosta*, 466 Mich 57, 62; 642 NW2d 663 (2002). We review the trial court's grant of summary disposition de novo. *Id.*

## III. ANALYSIS

### A. INTRODUCTION

The FOIA generally requires disclosure, upon written request, of public records in the possession of a "public body." MCL 15.233(1). "Public body" is defined in MCL 15.232(d) as follows:

> (i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.

> (ii) An agency, board, commission, or council in the legislative branch of the state government.

> (iii) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, *or agency thereof.*

> (iv) Any other body which is *created by state or local authority* or which is *primarily funded by or through state or local authority*.
>
> (v) The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body. [Emphasis added.]

### B. THE MHSAA IS NOT PRIMARILY FUNDED BY OR THROUGH STATE OR LOCAL AUTHORITY

We agree with and adopt the reasoning of the Court of Appeals majority in holding that the MHSAA is not a "public body" as that term is defined by MCL 15.232(d)(iv).

In granting summary disposition for plaintiffs, the trial court held that the MHSAA was "primarily funded through state or local authority" and thus qualified as a public body under § 232(d)(iv). The court, noting that it was required to give effect to each word and provision of the statute, held that the use of the terms "by" *and* "through" indicated that funds received both directly and indirectly would be considered in determining whether an entity was a public body under § 232(d)(iv). The court concluded that, although the MHSAA did not receive money directly from the schools, it "'enjoy[ed] the schools' moneymaking capacity as its own,'" quoting *Brentwood, supra,* and was therefore publicly funded.

11

Although we agree that the statutory terms "by" and "through" must each be accorded their unique meanings, and that this terminology suggests that even *indirect* public funding might satisfy the requirements of § 232(d)(iv), we find persuasive the analysis of the Court of Appeals majority:

> We read "by or through" to distinguish between the different meanings of the word "authority," that is, funding "by" a governmental authority (an *entity*) and funding "through" governmental decision-making authority (the *power* to regulate). Under our reasoning, the former refers to an entity that directly distributes its financial resources to the disputed organization, while the latter refers to the disputed organization indirectly receiving funds through some action or decision of the governmental body. [255 Mich App 579-580 (emphasis in original).]

The MHSAA is funded neither "by" nor "through" a governmental authority. As our Court of Appeals held in *State Defender Union Employees,* "funded," as used in § 232(d)(iv), means "the receipt of a governmental grant or subsidy." The MHSAA is not the recipient of any governmental grant or subsidy. The MHSAA's member schools do not distribute their financial resources to the MHSAA; nor do the schools indirectly fund the MHSAA through allocations of public monies. Rather, the MHSAA—an independent, nonprofit corporation—is primarily funded by the sale of its own tickets to private individuals who

12

have voluntarily paid a fee to observe an MHSAA-sponsored athletic event.  Member schools pay no dues or fees to the MHSAA, the MHSAA pays fees for the use of host facilities, and it receives no funds from host concessions; thus, the state provides absolutely no public resources to the MHSAA.[2]

---

2    The dissent has extracted broad dictionary definitions of the words "by" and "through" to suggest that the receipt of any monies *by virtue of* an entity's *relationship* with a state or local governmental body is sufficient to render that entity "funded by or through state or local authority."  The dissent's analysis, aside from conflating the distinct meanings of the words "by" and "through," completely disregards the meaning of the statutory term "*funded*."  As we have explained, the word "funded" does not connote the simple receipt of payment in return for services or materials provided; it connotes receipt of an allocation of resources or a subsidization. See *State Defender Union Employees*, *supra* at 432; *Random House Webster's College Dictionary* (1997).  Yet the dissent does not even require that an entity doing business with the government collect fees for goods or services in order to qualify as a public body; the *relationship* alone seems critical.  Such an extreme position is neither warranted by the language of the statute nor fathomable within the bounds of common sense. Taken to its logical conclusion, the dissent's version of the statute would place within the ambit of § 232(d)(iv) any contractor or other business that obtains a majority of its income from sales made or services rendered to governmental bodies.  See *Brentwood, supra* at 311 (Thomas, J., dissenting) ("the [Tennessee Secondary School Athletic Association's] 'fiscal relationship with the State is not different from that of many contractors performing services for the government.'"). (citation deleted). Consider, for example, the non-profit College Board, which administers the SAT to hundreds of Michigan students in the

Footnotes continued on following page.

Nor, contrary to the holding of the trial court and the opinion of our dissenting colleague, does the MHSAA "enjoy[] the schools' moneymaking capacity as its own."[3]

classrooms of participating public schools each year. Public school students pay the examination fee directly to the College Board, but under the dissent's rationale the Board would be a "public body" subject to FOIA disclosure requirements simply because it derives income "by virtue" of the fact that the public schools have facilitated an opportunity for the Board to administer this test in the schools.

[3] Our holding today is limited to the specific question whether the MHSAA is a "public body" within the meaning of the FOIA. We express no opinion concerning the relevance of *Brentwood, supra*, insofar as it may apply to the due process implications of the actions of the MHSAA. We have before us no constitutional question and decline to address whether the MHSAA is a "state actor" for purposes of 42 USC 1983 and the Fourteenth Amendment, as it would be inappropriate to import the concept of and analysis relevant to state action into our statutory analysis. Rather, we are constrained to apply the plain language of the FOIA's definitional provisions in determining whether the MHSAA is subject to the requirements of the FOIA.

While our dissenting colleague acknowledges this fact, see *post* at 9, she nevertheless appears to contend that the definition of "state actor" under federal law is "pertinent" in defining "public body" under the FOIA. This is particularly true of Justice Weaver's focus on "entwinement" as a relevant inquiry for defining "public body."

There is a rather straightforward answer to the dissent's utilization of "state actor" analysis: it is possible for MHSAA to be a state actor under § 1983 and the Fourteenth Amendment without being a "public body" under the FOIA *if the Legislature has defined "public body" in a manner inconsistent with Fourteenth Amendment*
Footnotes continued on following page.

14

The MHSAA organizes postseason tournaments, rents the game venues and sells tickets for those games. Without the MHSAA's leadership and organizational effort, no revenue from tournament games would be generated for any entity, including MHSAA member schools. In short, MHSAA creates its own "market" and revenue therefrom that would otherwise not exist without its effort. Finally, it is worth noting that member schools have *voluntarily* relinquished to the MHSAA any interest they may have had in ticket sales for athletic tournaments sponsored by the MHSAA, and the MHSAA,

---

*jurisprudence in the FOIA.* The dissent apparently cannot accept the possibility that the Legislature has the discretion to define "public body" in any way it chooses; yet she offers no support for the proposition that the Legislature was bound by or had in mind the definition of "state actor" under federal law when it drafted the FOIA. And, of course, there *is* no support for that proposition. The Legislature was free to define "public body" in the FOIA as narrowly or broadly as it wished. We give meaning to the Legislature's terms while the dissent is in search of alternate meanings.

The dissent not only conflates the meaning of "state actor" under § 1983 and the Fourteenth Amendment with the definition of a "public body" under the FOIA, but she goes on to extract from *Brentwood* the concept that the Tennessee Secondary School Athletic Association (TSSAA) (and, by analogy, the MHSAA) "enjoys the schools' moneymaking capacity as its own." As stated *supra* in note 2, the MHSAA is not "funded" by participating school districts but provides services in the activities it conducts and for which it collects gate receipts.

in turn, is fully responsible for the organization and administration of the tournament.

In this vein, we agree with the reasoning of the Court of Appeals in *State Defender Union, supra* at 432-433, that

> an otherwise private organization is not "funded by or through state or local authority" merely because public monies paid in exchange for goods provided or services rendered comprise a certain percentage of the organization's revenue. Earned fees are simply not a grant, subsidy, or funding in any reasonable, common-sense construction of those synonymous words. Rather, it is clear that, in the FOIA, *funded* means something other than an exchange of services or goods for money, even if the source of money is a governmental entity [emphasis in original].

The MHSAA, as noted, provides numerous services for its member schools, such as medical insurance for students, publications, training, and many other benefits that schools would not otherwise be in a position to provide. Here, even assuming that the private ticket-sale revenue at issue somehow passes "through" a governmental entity, these funds are received by the MHSAA in exchange for the multitude of services it performs for its members, most significantly the administration of the tournaments for which the tickets are sold. The MHSAA is therefore not "funded" by or through a governmental entity within the meaning of § 232(d)(iv).

16

## C. The MHSAA is Not Created By State or Local Authority

Plaintiffs contend that the MHSAA is a "creature" of the schools and that it is therefore "created by state or local authority" within the meaning of § 232(d)(iv). In support of this rather tenuous argument, plaintiffs cite *Kirby v MHSAA*, 459 Mich 23, 39 n 17; 585 NW2d 290 (1998), in which this Court stated that the MHSAA "is a creature of its members, with no independent authority over schools or students. The schools can and should exercise appropriate oversight of the MHSAA." Plaintiffs additionally, and inconsistently, argue that the MHSAA is a "de facto public body" because it has retained much of the same authority that was originally bestowed upon it in 1924: the authority to exercise control over the interscholastic athletic activities of all high schools of the state. Plaintiffs stress that high schools have no practical choice but to join the MHSAA if they want to participate in interscholastic sports.

We agree with the Court of Appeals majority that the MHSAA is no longer the same entity that was arguably "created" by state authority in 1924. Rather, the modern incarnation of the MHSAA is a wholly different organization from the entity that was at one time legislatively

17

designated as the official organization for the regulation of interscholastic sports in Michigan and that was housed within the Michigan Department of Education. The MHSAA is now a private corporation that is wholly self-regulated. Membership is, by statute, completely voluntary. See MCL 380.11a(4) (providing that "[a] . . . school district may join organizations as part of performing the functions of the school district"). In short, the MHSAA in its current form is not "created by state or local authority."

We further note that our comment in *Kirby*—that the MHSAA "is a creature of its members, with no independent authority over schools or students"—merely lends further credence to our conclusion that the MHSAA is not a public body. Michigan schools are in no way obligated to join the MHSAA, and they remain free to join other athletic organizations in lieu of, or in addition to, the MHSAA. Member schools do not relinquish authority or decision-making capacity to the MHSAA, nor does the MHSAA have any independent authority over its members.[4] There is simply

---

[4] Justice Weaver's assertion that the school districts "have delegated the authority to the MHSAA to make policy decisions," *post* at 19, is flatly incorrect. As noted above, the school districts have *voluntarily assumed* the athletic eligibility conditions set by the MHSAA. Again,
Footnotes continued on following page.

no basis for concluding that this private corporation is "created" by any governmental authority.[5]

D. THE MHSAA IS NOT AN AGENCY OF THE SCHOOLS

Finally, plaintiffs contend that the MHSAA acts as an "agent" for its member schools and that it is therefore a public body as defined by § 232(d)(iii):

> A county, city, township, village, intercounty, intercity, or regional governing body, council, *school district*, special district, or municipal corporation, or a board, department, commission, council, *or agency thereof*. [Emphasis added.]

The Court of Appeals majority and the parties appear to have assumed that § 232(d)(iii) includes "agents" of enumerated governmental entities in the definition of

while "entwinement" may be a relevant constitutional inquiry for defining who might be a state actor, it has no relevance to our obligation to give meaning to "public body" as the Legislature has defined it.

[5] The dissent's analysis suffers for placing undue emphasis on the historical connection between what is now a private, not-for-profit corporation and its previous incarnation as a state-controlled entity. See *post* at 9-10. This historical connection to the state, however interesting, is irrelevant to the question currently before the Court. At issue is not whether the 1924 incarnation of the MHSAA is a "public body," but whether today's *private* corporation composed of *voluntary* members is a "public body" under the FOIA. When one engages in this inquiry without conflating the present private corporation with its public ancestor, it is manifest that the MHSAA is not a "public body" under the FOIA.

19

"public body." We disagree and believe that there is a fundamental difference between the terms "agent" and "agency" as the latter term is used in the statute.

As we have noted on many occasions, a statutory term cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme.

> "Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: 'it is known from its associates,' see Black's Law Dictionary (6th ed), p 1060. This doctrine stands for the principle [of interpretation] that a word or phrase is given meaning by its context or setting." . . . Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. . . . [*Sweatt v Dep't of Corrections*, 468 Mich 172, 179-180; 661 NW2d 201 (2003) (citations omitted).]

Although the noun "agency" may be used to describe a business or legal relationship between parties, it is wholly evident from the context of § 232(d)(iii) that this is not the sense in which that term is used. Section 232(d)(iii) designates several distinct governmental units as public bodies, and proceeds to include in this definition any "agency" of such a governmental unit. In this specific context, the word "agency" clearly refers to a *unit or division of government* and not to the

20

*relationship* between a principal and an agent. Had the Legislature intended any "agent" of the enumerated governmental entities to qualify under § 232(d)(iii), it would have used that term rather than "*agency*."[6] Thus, we reject plaintiffs' argument that the MHSAA acts as an "agent" of its member schools and that it thus qualifies as an "agency" under § 232(d)(iii).[7]

---

[6] The Department of Labor and Economic Growth, for example, is a governmental "agency," but a real estate office hired to sell governmental property is *not* a governmental "agency." Indeed, it would defy logic (as well as the plain language of § 232[d][iii]) to conclude that the Legislature intended that any person or entity qualifying as an "agent" of one of the enumerated governmental bodies would be considered a "public body" for purposes of the FOIA.

[7] Moreover, even if we were to conclude that the term "agency" as used in § 232(d)(iii) includes agents of the enumerated governmental entities, the MHSAA is an independent body that is in no way the "agent" of its members. As noted by the Court of Appeals majority in this case, "[i]t is a fundamental principle of hornbook agency law that an agency relationship arises only where the principal 'has the right to control the conduct of the agent with respect to matters entrusted to him.'" *St Clair Intermediate School Dist*, *supra* at 557-558 (citations omitted). The MHSAA is governed by its own internal board. The individual school members have no authority over the actions of the MHSAA. Moreover, by joining the MHSAA, member schools are required to relinquish to the MHSAA complete authority over the rules and officiating of MHSAA-sponsored athletics.

V.   CONCLUSION

The MHSAA, a private, nonprofit organization having a wholly voluntary membership of private and public schools, is not a "public body" within the meaning of the FOIA and is therefore not subject to the FOIA's provisions. Accordingly, we affirm the decision of the Court of Appeals.

Robert P. Young, Jr.
Maura D. Corrigan
Michael F. Cavanagh
Clifford W. Taylor
Stephen J. Markman

MARTIN B. BREIGNER III AND
KATHRYN BREIGHNER,

    Plaintiffs-Appellants,

v                                       No. 123529

MICHIGAN HIGH SCHOOL ATHLETIC
ASSOCIATION,

    Defendant-Appellee.

_____

WEAVER, J. (*dissenting*)

    Plaintiffs in this case seek information pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, regarding how the Michigan High School Athletic Association, Inc. (MHSAA), determines which alpine ski races and racers are sanctioned from or for participation. The MHSAA disqualified plaintiffs' son from competing with his public high school ski team during the 2002 season because he skied in one race that the MHSAA did not sanction.

    The question in this case is whether the MHSAA is a public body that must comply with the disclosure requirements of the FOIA. Until the revision of the public school code by 1995 PA 289, there was no dispute that the

MHSAA was subject to the FOIA.  However, the majority holds that the 1995 revision of the school code insulated the MHSAA from public scrutiny previously available under the FOIA.  I disagree and would hold that the MSHAA is a public body subject to the FOIA because it is both created by and primarily funded by or through public school districts.

I

The FOIA was enacted to continue the common-law right Michigan citizens have traditionally possessed to access government documents. See *Walen v Dep't of Corrections*, 443 Mich 240, 253; 505 NW2d 519 (1993) (RILEY, J. concurring in part); *Evening News Ass'n v Troy*, 417 Mich 481, 494-495; 339 NW2d 421 (1983) (discussing Michigan's established history of requiring public agency disclosure). As *Nowack v Auditor General*, 243 Mich 200, 203-204; 219 NW 749 (1928) explained:

> If there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Ours is a government of the people. Every citizen rules. . . . Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted. There is no such law and never was either in this country or in England. Mr. Justice MORSE was right in saying:
>
> > "I do not think that any common law ever obtained in this free government that would deny

2

> to the people thereof the right of free access to, and public inspection of, public records." *Burton v. Tuite*, 78 Mich 363, 374 (7 LRA 73) [44 NW 282 (1889)].
>
> There is no question as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate.

This right to access provides the policy foundation underlying the FOIA. "The FOIA was enacted to continue this tradition of openness." *Walen*, *supra* at 254 (Riley, J.).

The FOIA specifically provides that

> all persons . . . are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2).]

The FOIA subjects "public bodies" to its public records disclosure requirements. MCL 15.235. The FOIA provides several definitions of "public body," any one of which subjects an entity to the FOIA's public record disclosure requirements. MCL 15.232(d)(iv) defines one sort of public body as "[a]ny other body which is created by state or local authority or which is primarily funded by or through state or local authority." I would hold that the MHSAA is a public body because it is both "created by state

3

or local authority" and "primarily funded by or through state or local authority."

Statutory language is to be read according to its ordinary and generally accepted meaning. *Tryc v Michigan Veterans' Facility,* 451 Mich 135; 545 NW2d 642 (1995). If the language at issue is plain and unambiguous, we assume the Legislature intended its plain meaning and enforce the statute as written. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). It is appropriate to refer to a dictionary to discern a statute's plain meaning. *State ex rel Wayne Co Prosecuting Attorney v Levenberg*, 406 Mich 455, 465-466; 280 NW2d 810 (1979).

## II

Public school districts are expressly listed as public bodies under the statute. MCL 15.232(d)(iii). Moreover, the provision of interscholastic athletics has long been and now remains a proper function of public school districts, and the MHSAA's relationship with the public schools in the provision of interscholastic athletics is firmly established.

### A

The MHSAA is "Created By" School Districts

Under 1923 PA 237, the superintendent of public instruction was delegated the authority to supervise and

4

control interscholastic athletic activities.  The MHSAA was first organized in 1924 for the purpose of coordinating and regulating interscholastic athletic activities.[1]  Within the first year of its creation, the MHSAA presented a "Suggested Set of Standards and Practices of Athletic Administration."  Regarding these standards, the superintendent of public instruction wrote:

> Any athletic program to be worth having at all must contribute something to the educational value to its board.  To do that it must be the result of the cooperative effort on the part of the superintendent, principal, althletic director, and student body.  Complete control of the program must remain in the school itself. Any set of standards and practices must guide all these various groups.[2]

Until 1972, the MHSAA was apparently "housed within the Michigan Department of Education, and its Executive Director was known as the 'State Director of Athletics.'" *Communities for Equity v Michigan High School Athletic Ass'n,* 178 F Supp 2d 805, 810-811 (WD Mich, 2001).  The

---

[1]  Since the founding of the MHSAA the state superintendent of public instruction has been as an ex-officio member of the Representative Council that governs the MHSAA.  See, Lewis L. Forsythe, *Athletics in Michigan High Schools—The First Hundred Years*, (Prentice-Hall, Inc 1950), which documents the development of high school athletics and the creation of organizations to coordinate interscholastic athletics since 1848.

[2] *Id.* at 172.

MHSAA's handbook, rules, and regulations were part of the Michigan Administrative Code. *Id.* at 811.

In 1972, the School Code was amended and the authority over interscholastic athletics was moved from the State Board of Education to individual school districts. *Id.* The Legislature expressly provided that school districts could join "an organization, association or league which has as its object the promotion of sport . . . and regulation of athletic . . . contests . . . ." Former MCL 340.379. Although the statute did not expressly designate the MHSAA as the official organization for interscholastic athletics, it did provide that "*An association* established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools shall be the official association of the state." *Id.* (emphasis added). It has been assumed that the Legislature was referencing the MHSAA. See *Communities for Equity, supra* at 811.

Also in 1972, the MHSAA reorganized as a private not-for-profit corporation. The MHSAA's purpose remained essentially unchanged after 1972. As stated in the 1972 articles of incorporation, the MHSAA was intended

> to create, establish and provide for, supervise and conduct interscholastic athletic programs throughout the state consistent with the

6

educational values of the high school curriculums [sic]. . . .[3]

As under the former law, membership in the MHSAA was voluntary. Nevertheless, once a school district joins the MHSAA, it was and is bound by the MHSAA's rules.[4]

There is no express mention of athletics in the school code as revised in 1995. The law now simply authorizes school districts to "join organizations *as part of performing the functions of the school district.*" MCL 380.11a(4) (emphasis added). However, the Revised School Code further provides that the powers of school districts are not diminished "[u]nless expressly provided in the

---

[3] This description is from the MHSAA's April 18, 1972, articles of incorporation.

[4] When a school district joins the MHSAA, it must annually adopt the MHSAA membership resolution. That resolution provides that the school district:

> Accepts the Constitution and By-Laws of [MHSAA] and adopts as its own the rules, regulations and interpretations (as minimum standards), as published in the current *HANDBOOK* and qualifications as published in the *BULLETIN* as the governing code under which the said school(s) shall conduct its program of interscholastic activities and agrees to primary enforcement of said rules, regulations, interpretations and qualifications. In addition, it is hereby agreed that schools which host or participate in the association's meets and tournaments shall follow and enforce all tournament policies and procedures.

7

amendatory act . . . ." MCL 380.11a(9). Thus, it can be concluded that the provision of athletics remains a proper function of school districts. It is also undisputed that the MHSAA remains the primary statewide organization that coordinates the interscholastic athletics for public school districts in Michigan.[5]

Given this history, the majority's suggestion that the MHSAA is "a wholly different organization from the entity that was at one time legislatively designated as the official organization for the regulation of interscholastic sports in Michigan and that was housed within the Michigan Department of Education," *ante* at 18, is inaccurate. As noted above, the MHSAA was not expressly named in the statute as the "official" state interscholastic organization after 1972. Further, the majority suggests that the "voluntary" nature of membership in the MHSAA is a new reality under the 1995 Revised School Code. This is not true. Membership has always been and remains voluntary. At any point since 1924, a school district could decide to not participate in interscholastic athletics and to not join the MHSAA.

---

[5] The MHSAA's comprehensive control that it has retained over interscholastic athletics is reviewed in *Communities for Equity, supra* at 810-814.

School districts allow the MHSAA to coordinate sports events because the MHSAA is the dominant statewide organization of interscholastic athletics, and failure to join and comply with the MHSAA rules would effectively prevent the schools from participating in interscholastic athletics. Moreover, the MHSAA's written materials demonstrate that the MHSAA is intertwined with the school districts. Specifically included in the MHSAA's eligibility guidelines are requirements that the student athlete passes at least twenty credit hours and not have been enrolled in more than eight semesters in high school.[6] Thus, not only is the MHSAA involved in the athletic activities of the students, it also establishes rules concerning the scholastic performance of the student athletes.

As noted in *Communities for Equity, supra* at 811, the 1995 amendment of the Revised School Code, "resulted in no substantive changes in the structure or operation of the MHSAA or in its relationships with its member schools." The MHSAA was created by school districts that came together in 1924 to organize interscholastic athletics, and the organization of interscholastic athletics remains the

---

[6] <http://www.mhsaa.com/administration/eligibility.pdf> (accessed July 28, 2004).

MHSAA's purpose.  When school districts join the MHSAA through annual resolutions passed by the school boards, they adopt the MHSAA's constitution, by-laws, rules and regulations "as their own."[7]  Therefore, under the FOIA the MHSAA should be treated as a "public body" because it is "created by state or local authority."

The United States Supreme Court case of *Brentwood Academy v* Tennessee *Secondary School Athletic Ass'n,* 531 US 288; 121 S Ct 924; 148 L Ed 2d 807 (2001), supports the conclusion that the MHSAA is a public body that was created by state or local authority.  In *Brentwood,* the United States Supreme Court held that the Tennessee Secondary School Athletic Association (TSSAA) was a state actor subject to constitutional limitations.  While it is unnecessary to decide whether the MHSAA is a state actor to determine whether the MHSAA is subject to the FOIA, the *Brentwood* Court's discussion of the TSSAA is of interest and relevant to this case because of the TSSAA's similarities to the MHSAA.  In *Brentwood*, the TSSAA, like the MHSAA, was a not-for-profit corporation that was formed

---

[7] As we have noted before, the MHSAA is a "creature of its members". *Kirby v MHSAA*, 459 Mich 23, 39 n 17; 585 NW2d 290 (1998).

to oversee the interscholastic sports programs among public and private high schools in the state. The TSSAA imposed sanctions against plaintiff Brentwood Academy based on recruiting violations. In finding that the TSSAA was a state actor, the United States Supreme Court noted that "the nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings. . ." *Id.* at 298. *Brentwood* also noted the TSSAA's membership consisted of predominantly public schools, its revenue came from its membership dues and gate receipts from tournaments held at member schools, state officials were given ex officio status on the legislative council, and TSSAA employees were eligible for the state employees retirement system. *Id*. at 298-300.[8] It is

_____

[8] Interestingly, the United States District Court, in *Communities for Equity, supra* subsequently held that, under the United States Supreme Court decision in *Brentwood,* the facts presented in *Communities for Equity* necessitated a finding that the MHSSA was a state actor. *Id.* at 847.

The United States District Court explained:

> The purpose of the MHSAA—to create, establish and provide for, supervise and conduct interscholastic athletic programs throughout the state—is virtually the same as its Tennessee counterpart. The MHSAA has a membership of predominantly public schools and almost every eligible public school belongs. Its revenue is derived from gate receipts from tournaments held

Footnotes continued on following page.

notable that before the United States Supreme Court in *Brentwood* reversed the Sixth Circuit's conclusion that the TSSAA was *not* a state actor, the MHSAA argued that it was "very similar in structure" to the TSSAA and "that the nature and function of the MHSAA is virtually identical to that of the TSSAA." See *Communities for Equity*, *supra* at 846-847. To suggest that an entity like the MHSAA could be a state actor, but not also a "public body" under the FOIA would undercut the stated purpose of the FOIA that "[a]ll persons . . . are entitled to full and complete information regarding the affairs of government . . . ." MCL 15.231(2).

_____

at member schools and broadcast fees, among other items, revenues to which schools would otherwise be entitled. The membership of the MHSAA's Representative Council includes a representative of the superintendent of education and is comprised of mostly public school employees acting as representatives for their schools. Some MHSAA employees continue to be eligible for participation in the state employee retirement system. Moreover, the MHSAA exercises adjudicative power over the schools with its ability to investigate and determine rules violations and resultant sanctions.

Just as the Supreme Court recognized that a mechanism is required to implement interscholastic sports schedules and competition rules governing Tennessee's schools, that mechanism in the State of Michigan takes the form of public school officials acting together under the auspices of the MHSAA. [*Id*. at 847.]

12

### The MHSAA is Primarily Funded
### by or through School Districts

The MHSAA is "primarily funded" as a result of its relationship with the public school districts. The majority definition of "funded" as narrowly pertaining only to "the receipt of a governmental grant or subsidy," *ante* at 9, 12, defies common sense. The majority's definition originates in a Court of Appeals decision[9] that first cites a dictionary definition of "fund" (as a verb), and then skips to a synonym, "subsidize," that the panel discovered in a thesaurus. Apparently preferring "subsidize" to "fund," even though the term "fund" was used by the Legislature,[10] the panel then turned to a dictionary definition of "subsidy" (a noun) and discovered that a "subsidy" is defined as "a direct financial aid furnished by a government . . . [or] any grant or contribution of money." Thus, by mixing verbs and nouns and substituting words for those employed by the Legislature, the panel

---

[9] For its definition of "funded," the majority relies on an interpretation conceived in *State Defender Union Employees v Legal Aid and Defender Ass'n of Detroit*, 230 Mich App 426; 584 NW2d 359 (1998), a decision written by the author of the majority opinion while serving on the Court of Appeals.

[10] Apparently the panel also preferred "subsidize" over other common synonyms of "fund" such as "endow" or "finance." *Webster's Collegiate Thesaurus* (1976).

creatively narrowed "is . . . funded" under the statute to mean the "receipt of a government grant or subsidy." While it is appropriate to refer to dictionary definitions to understand the ordinary meaning of words, it is not appropriate to pick and choose among synonyms that may only have "nearly the same" or "similar"[11] meaning and substitute those for the words specifically employed by the Legislature.

I would conclude, that a "fund" can be understood to be "money available for use" so that when something "is funded" it is provided for "by a fund," i.e. by "money available for use . . ." *Webster's New World Dictionary* (3d ed). Michigan public schools represent eighty percent of the MHSAA's membership and approximately ninety to ninety-five percent of the MHSAA's funding is from gate receipts from postseason athletic tournaments for football and basketball involving public school teams. Without the voluntary participation of the public school districts in the MHSAA organized interscholastic athletic season and postseason tournaments, as well as the school districts' relinquishment of the gate receipts to MHSAA, it would

---

[11] *Webster's, supra*, defining "synonym" and "synonymous."

14

cease to exist because its primary source of money available for its use would disappear.

However, the question remains whether the MHSAA's gate receipt funding is derived "by or through" public school districts. There are many inapplicable definitions of the terms "by" and "through." But in the context of MCL 15.232(d)(iv), the most applicable definition of "by" in *Webster's* addresses the term as used to express permission or sanction. In that sense, "by" is defined as "with the authority or sanction of [*by* your leave]."[12] The applicable definitions of "through" in *Webster's* are "by means of [*through* her help]" and "as a result of; because of [done *through* error]."[13] *Id.*

Thus, the plain meaning approach to "by" or "through" in the context of the statute at issue is whether the gate receipts amount to funding that the MHSAA receives with the authority or sanction of the school districts or by means

_____

[12] In Black's Law Dictionary (6th ed), "by" is similarly defined as "[t]hrough the means, act, agency or instrumentality of."

[13] In Black's, *supra,* "through" is defined similarly as "[b]y means of, in consequence of, by reason of [and] [b]y the intermediary of; in the name or as the agent of; by the agency of; because of."

15

of, as a result of, or because of the school districts.[14]  I would hold that because the MHSAA receives its primary funding as with the authority of (by) and as a result of (through) the voluntary membership of public school districts in the MHSAA and the school districts' voluntary participation in the interscholastic athletic seasons and postseason tournaments organized by the MHSAA, the MHSAA is primarily funded "by or through" the schools and is a public body under MCL 15.232(d)(iii) of the FOIA.

Rather than look at the plain meaning of the words at issue, the majority suggests that the terms "by" and "through" must refer to different kinds of governmental authority.  The majority adopts the analysis of the Court of Appeals and concludes that "by" refers to an entity that directly distributes its financial resources to the disputed organization.  The majority then says "through" refers to the disputed organization indirectly receiving funds through some action or decision of the governmental

---

[14] The terms "by" and "through" are often combined in the phrase "by and through."  Garner, A Dictionary of Modern Legal Usage (2d ed), described "by and through" as "typical LEGALESE" that "can be replaced with either *by or through.*"  MCL 8.3a (emphasis added) provides that "[a]ll words *and phrases* shall be construed and understood according to the common and approved usage of the language . . . ."  Thus, the majority's assertion that these words in this context must each be accorded "its unique meaning," *ante* at 11, is incorrect.

16

body. *Ante* at 11-12. However, to understand the statute, it is not necessary to engraft concepts of direct and indirect funding or to conclude that the Legislature intended to reference different kinds of governmental authority when it only used the term authority once. The majority's approach defies the plain language of the statute and unduly constricts the definitions of "public body" and of "funded."

In *Brentwood*, the Unite States Supreme Court addressed the nature of gate receipts received by a similar state school athletic organization for its organization and sponsorship of public school athletic tournaments and stated:

> Unlike mere public buyers of contract services, whose payments for services rendered do not convert the service providers into public actors, . . . the schools here obtain membership in the service organization and give up sources of their own income to their collective association. The Association . . . exercises the authority of the predominantly public schools to charge admission to their games; the Association does not receive this money from the schools, but enjoys the moneymaking capacity as its own. [*Brentwood, supra* at 299.]

Like the TSSAA, the MHSAA is more than a public contractor exchanging payments for services. By collecting gate

17

receipts at tournaments, the MHSAA enjoys the schools' moneymaking capacity as its own.[15]

This underscores the conclusion that the MHSAA receives its primary funding "by or through" the schools' authority.  The majority argues that the MHSAA "creates its own 'market,'" and stresses that without the MHSAA's effort "no revenue from tournament games would be generated for any entity, including MHSAA member schools."  *Ante* at 12-13, 15.  The majority thus concludes that the MHSAA is merely a service provider and that the gate receipts are simply fees paid for services.

However, as noted above, the MHSAA is not simply in a situation where the organization provides a fee for a particular service.  True, the MHSAA does organize interscholastic seasons and postseason tournaments.  It also provides medical insurance, publications, and training to its members.  However, schools do not join the MHSAA or allow it to sell tickets to events featuring student athletes simply because the MHSAA provides medical insurance, publications, or training.  As already explained, school districts allow the MHSAA to coordinate

_____

[15] Justice Thomas's dissenting perspective regarding the relationship of the association to the schools in *Brentwood* did not prevail.  The majority's citation of it, *ante* at 13 n 2, is not persuasive.

18

events and relinquish related gate receipts to the MHSAA because the MHSAA is the dominant statewide organization of interscholastic athletics, and failure to join and comply with MHSAA rules would effectively prevent the schools from participating in interscholastic athletics.

It should be noted that the MHSAA is distinguishable from ordinary service providers to the schools. The school districts have delegated the authority to the MHSAA to make policy decisions. These decisions are within the proper function of school districts to regulate athletics, MCL 380.11a(4); MCL 380.11a(9), such as athletic eligibility and training, participation in outside sports activities and required scholastic achievement for participating athletes. This intertwinement between the MHSAA and the school districts makes the MHSAA subject to the FOIA where an ordinary service provider would not be.

II

Conclusion

It has been and remains the submission of public school districts to the rules and regulations of the MHSAA that allows the MHSAA to exist. It can thus be concluded that the MHSAA was created by the school districts. MCL 15.232(d)(iv). It is similarly by and through the MHSAA's relationship with the schools that it may sell tickets for

19

tournaments featuring public school athletes.  It follows that the gate receipts the MHSAA receives for those events are received "by or through" the authority of the schools as those words are used in MCL 15.232(d)(iv).  The purpose of the FOIA is to allow citizens to fully participate in the democratic process regarding the affairs of government and the official acts of those who represent them. MCL 15.231(2).  The school districts have effectively delegated the responsibility for those official acts, as they pertain to school athletics, to the MHSAA by repeatedly adopting its rules as their own.

Thus, both to follow the language of the FOIA and remain true to the purpose behind its enactment, I would hold that the MHSAA is a public body that must comply with the disclosure requirements of the FOIA.

Elizabeth A. Weaver
Marilyn Kelly