BREIGHNER v MICHIGAN HIGH SCHOOL
ATHLETIC ASSOCIATION, INC

Docket No. 243618. Submitted February 5, 2003, at Lansing. Decided March 6, 2003, at 9:00 A.M. Leave to appeal sought.

Martin B. Breighner, III, and Kathryn Breighner brought an action in the Emmet Circuit Court against the Michigan High School Athletic Association, Inc. (MHSAA), seeking a declaration that the MHSAA was a public body for purposes of the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, after the MHSAA refused to provide the Breighners with additional information regarding its criteria for sanctioning ski races. On cross-motions for summary disposition, the trial court, Charles W. Johnson, J., held that the MHSAA was a public body for purposes of the FOIA because it was primarily funded by or through state or local authority. MCL 15.232(d)(iv). The MHSAA appealed.

The Court of Appeals *held*:

1. Answering the question whether the MHSAA is a public body for purposes of the FOIA requires the application of two separate tests under MCL 15.232(d)(iv). The first test is whether the MHSAA was created by state or local authority. The second test is whether the MHSAA is primarily funded by or through state or local authority.

2. Despite its initial creation as the body that oversaw interscholastic sports in this state, the MHSAA, in its modern form as a private, not-for-profit corporation, is a unique entity that was not created or caused to come into being by state or local authority, and thus is not a public body under the first test of MCL 15.232(d)(iv).

3. In applying the language "primarily funded by or through state or local authority" contained in MCL 15.232(d)(iv), "by or through" should be read to distinguish between the different meanings of the word "authority," meaning, funding "by" a government authority or entity, and funding "through" governmental decision-making authority—the power to regulate. The former refers to an entity that directly distributes its financial resources to the disputed organization, while the latter refers to the disputed organization indirectly receiving funds through some action or decision of the governmental body.

4. The facts revealed that neither the state nor the member schools contribute any funding to the MHSAA, and that the majority of the MHSAA's revenue comes from meets and tournaments organized and held by the MHSAA. The member schools choose to use the services of the MHSAA and have no independent authority over the MHSAA. The relationship between the MHSAA and its member schools is a mutually beneficial and symbiotic association. The fact that member schools sometimes collect and then remit gate receipts to the MHSAA, in a servicing-type capacity, does not change the nature of this relationship. Thus, the MHSAA is not funded "by or through" any state or local authority and is not a public body under the second test of MCL 15.232(d)(iv).

5. The MHSAA is not an agent of the member school districts because the school districts exercise no independent control over the MHSAA, and thus the MHSAA is not a public body under MCL 15.232(d)(iii).

6. The trial court erred in granting summary disposition in favor of the plaintiffs' because the MHSAA is not a public body under any of the relevant definitions in MCL 15.232(d).

Reversed.

JANSEN, J., dissenting, stated that she would affirm the order granting the plaintiffs' motion for summary disposition because the trial court properly held that the MHSAA is a public body for purposes of the FOIA. In determining whether the MHSAA is a public body primarily funded by or through state or local authority under MCL 15.232(d)(iv), it must be noted that the MHSAA is the institution that regulates interscholastic high-school sports in this state, and that the tournaments and meets from which the MHSAA derives the majority of its funding could not be held without the participation or authorization of the member schools. The facts show that the member schools sell the tickets for these tournaments and authorize the remission of gate receipts to the MHSAA. Thus, the gate receipts come to the MHSAA only through the schools' authority to regulate sporting events for their students in the first place. Holding that the MHSAA is a public body for purposes of the FOIA is consistent with the Court's past interpretations of MCL 15.232(d), and with federal case law on the legal status of the MHSAA and similar organizations.

*Wayne R. Smith* and *Lester N. Turner* for the plaintiffs.

*Edmund J. Sikovski, Jr.,* for the defendant.

Before: SAWYER, P.J., and JANSEN and DONOFRIO, JJ.

DONOFRIO, J. Defendant Michigan High School Athletic Association, Inc., (MHSAA) appeals as of right a grant of summary disposition in favor of plaintiffs, Martin B. Breighner, III, and Kathryn Breighner, pursuant to MCR 2.116(C)(8). Plaintiffs cross-appeal. We reverse.

## I. FACTS

The facts in this case are not in dispute. In 2001 plaintiffs' son, Jordan Breighner, was a member of the Harbor Springs High School ski team. Harbor Springs High School is a member of the MHSAA; therefore, the ski team is subject to MHSAA regulations. Beyond his participation in the ski team, Jordan competed in a ski race in Canada. Jordan later found out that he had exceeded the number of "non-sanctioned" races high-school ski-team members are allowed to participate in under the MHSAA rules. As a result, he was disqualified from competing on the Harbor Springs ski team for the remainder of the season.

Plaintiffs attempted to obtain information from the MHSAA regarding its criteria for sanctioning races, but were unsatisfied with what the MHSAA provided. Ultimately, they sent the MHSAA a letter requesting the information under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* However, defendant provided no additional information. Thereafter, plaintiffs filed an action in the Emmet Circuit Court seeking a declaratory judgment that the MHSAA was a public body for purposes of the FOIA, that the requested documents were nonexempt, and that defendant had violated the FOIA.

Plaintiffs and defendant moved for summary disposition. The trial court granted plaintiffs' motion, ruling that the MHSAA was a public body for purposes of the FOIA. Specifically, the trial court held that the MHSAA was "primarily funded by or through state or local authority." MCL 15.232(d)(iv). The court reasoned that because the MHSAA was funded through tournament gate receipts, the taking of such funds constituted indirect public funding. Also, the court stated that the MHSAA enjoyed the schools' moneymaking capacity as its own. The court declined to decide plaintiffs' arguments that the MHSAA also fell within two alternative definitions of "public body": (1) "created by state or local authority," MCL 15.232(d)(iv); and (2) "[a] county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof," MCL 15.232(d)(iii). The instant appeal followed. Plaintiffs cross-appeal, claiming that the trial court's order, by implication, requires the MHSAA to provide the requested information.

## II. STANDARD OF REVIEW

On appeal, we are asked to determine whether the MHSAA is a public body for purposes of the FOIA. Because this is a question of statutory interpretation, our review is de novo. *Oakland Co Bd of Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). Moreover, our review of a trial court's decision regarding summary disposition in a declaratory-judgment action is de novo. *Michigan Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 114; 617 NW2d 725 (2000).

### III. The MHSAA

The MHSAA was originally founded in 1924,

"to exercise control over the interscholastic athletic activities of all schools of the state through agreement with the Superintendent of Public Instruction." . . . Historically, the interscholastic athletic programs of all Michigan public schools were supervised and controlled by either the Michigan Superintendent for Public Instruction or by the State Board of Education. . . . The MHSAA was housed within the Michigan Department of Education, and its Executive Director was known as the "State Director of Athletics." . . . The MHSAA's handbook, rules, and regulations were part of the Administrative Code of the State of Michigan. [*Communities for Equity v Michigan High School Athletic Ass'n*, 178 F Supp 2d 805, 810 (WD Mich, 2001) (quoting trial exhibits).[1]]

The MHSAA became an incorporated, nonprofit membership organization in 1972, and states its purpose in its Articles of Incorporation as follows:

To create, establish and provide for, supervise and conduct interscholastic programs throughout the state consistent with the educational values of the high school curriculums, the interest in physical welfare and fitness of the students participating therein by giving the opportunity to participate in athletics designed to meet the needs and abilities of all and to make and adopt such rules and regulations and interpretation thereof to carry out the foregoing and to further provide for the training and registering of officials and to publish and distribute such information consistent therewith and to do any and all acts and services necessary to carry out the intent hereof.

---

[1] We note that we have utilized *Communities for Equity* for historical information only. *Communities for Equity* is a state-action case, and is not relevant to our discussion of the issues presented in this appeal.

In 1972, the Legislature transferred control of inter-
scholastic athletics from the State Board of Education
to the individual districts' school boards. 1972 PA 2,
§ 379 (repealed 1976); MCL 340.379 (repealed); MCL
380.1289 (amended). In 1995, the Legislature removed
the MHSAA as the "official" organization overseeing
interscholastic sports. In doing so, the Legislature
stated that school districts were allowed to "join
organizations as part of performing the functions of
the school district." MCL 380.11a(4). Despite the
removal of the official designation, recent estimates
are that over seven hundred Michigan high schools
are members of the MHSAA, over eighty percent of
which are public. *Communities for Equity, supra* at
810. The MHSAA requires that member districts pass
the following resolution to join the MHSAA:

> The Board of Education/Governing Body hereby dele-
> gates to the Superintendent or his/her designee(s) the
> responsibility for the supervision and control of said activi-
> ties, and hereby accepts the Constitution and By-Laws of
> said association and adopts as its own the rules, regulations
> and interpretations (as minimum standards), as published
> in the current HANDBOOK and qualifications as published in
> the BULLETIN as the governing code under which the said
> school(s) shall conduct its program of interscholastic activi-
> ties and agrees to primary enforcement of said rules, regu-
> lations, interpretations and qualifications. In addition, it is
> hereby agreed that schools which host or participate in the
> association's meets and tournaments shall follow and
> enforce all tournament policies and procedures.

The MHSAA is governed by its Representative Coun-
cil, which is made up of nineteen voting members:
fourteen members elected by member schools, four
members appointed by the Representative Council,
and one representative of the state superintendent of

education. *Communities for Equity, supra* at 812. Each of the fourteen elected and four appointed members must be a faculty member or board-of-education member from a member school. *Id.* The MHSAA also has a five-member Executive Committee, all of whom are members of the Representative Council. *Id.* The Representative Council has " '[g]eneral control of interscholastic athletic policies,' " while the Executive Committee has power to " '[m]ake all rules necessary for the effective control and government of inter-school activities . . . .' " *Id.* As a whole, the MHSAA "regulates interscholastic athletic competition between member schools and sets standards for school membership and eligibility of students to participate in interscholastic athletics." *Id.* at 811.

### IV. THE FOIA

The FOIA is an act "to provide for public access to certain public records of public bodies." 1976 PA 442. "In enacting the FOIA, the Michigan Legislature made it public policy that citizens are entitled to complete information concerning the affairs of their government so that they can fully participate in the democratic process." *Sclafani v Domestic Violence Escape,* 255 Mich App 260, 263-264; 660 NW2d 97 (2003). MCL 15.231(2) provides an express statement of the public policy, or legislative intent, behind the FOIA:

It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be

informed so that they may fully participate in the democratic process.

The FOIA defines "public body" in MCL 15.232(d) as follows:

(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.

(ii) An agency, board, commission, or council in the legislative branch of the state government.

(iii) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or *agency thereof.*

(iv) Any other body which is *created by state or local authority or which* is *primarily funded by or through state or local authority.*

(v) The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body. [Emphasis added.]

This Court has recognized that MCL 15.232(d)(iv) has been described as a "catchall" provision. *Sclafani, supra* at 265.

### V. ANALYSIS

The primary goal of statutory interpretation is to determine and give effect to the intent of the Legislature. *Frankenmuth Mut Ins v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). Where the words of a statute clearly set forth its meaning, additional interpretation is not allowed, and the statute

must be enforced as written. *Pohutski v Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). However, where a statute is ambiguous, in other words, subject to more than one reasonable interpretation, then judicial construction is appropriate to determine legislative intent. *Adrian School Dist v Michigan Pub School Employees Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998). In any event, we may not impose our own policy goals when interpreting a statute. *Sclafani, supra* at 265-266.

Our principal inquiry is whether defendant falls within certain definitions of "public body" included in the FOIA. Any "body . . . which is primarily funded by or through state or local authority" is a "public body" for purposes of the FOIA. MCL 15.232(d)(iv). The trial court held that the MHSAA met this definition of "public body." We disagree.

## A. CASE LAW

This Court first addressed this clause of the FOIA in *Kubick v Child & Family Services of Michigan, Inc*, 171 Mich App 304, 307; 429 NW2d 881 (1988). In *Kubick*, the plaintiff had attempted to obtain records from the defendant, a private, nonprofit organization that provided supervision and foster care for the plaintiff's daughters during attempts to rehabilitate the plaintiff as a mother. *Id.* at 306. This Court determined that because the defendant received less than half its financial resources[2] "from government funds,"

---

[2] The term "financial resources" is used as a generic term throughout this opinion to refer to the money, funds, income, or capital disputed under the FOIA's "primarily funded by or through" language.

it was not *primarily* funded by or through government. *Id.* at 308.

In *Jackson v Eastern Michigan Univ Foundation*, 215 Mich App 240, 245; 544 NW2d 737 (1996), this Court, consistent with the *Kubick* decision, held that because Eastern Michigan University provided the defendant, a nonprofit corporation, with the majority of its financial resources, the defendant foundation met the FOIA's definition of "public body." *Id.* at 246. In *Jackson*, the defendant foundation was "organized and operated 'exclusively to receive, hold, invest, and administer funds and to make expenditures to or on behalf of Eastern Michigan University.' " *Id.* at 242, quoting the defendant's articles of incorporation. The trial court concluded that because the foundation was expected to be self-supporting within a number of years, it was not funded by or through the university. However, this Court rejected that analysis. Instead, "the relevant inquiry is whether the foundation 'is' primarily funded by or through state or local authority at the time of plaintiff's FOIA request." *Id.* at 246. Although defendant here argues that a private organization cannot be a "public body," the *Jackson* Court concluded that the university foundation, a private organization, was a public body under the FOIA. *Id.*

In 1998, this Court again examined the language "primarily funded by or through state or local authority" in *State Defender Union Employees, UAW Local 412-Unit 64 v Legal Aid & Defender Ass'n of Detroit*, 230 Mich App 426; 584 NW2d 359 (1998). However, rather than focus on "primarily," the Court instead examined the term "funded," and answered the narrow question, "whether an organization that receives payment from governmental sources in return for pro-

viding services is 'funded by or through state or local authority,' irrespective of the amount of those payments." *Id.* at 431. The Court determined that " 'funded' should be construed to mean the receipt of a governmental grant or subsidy." *Id.* at 432. In other words,

> an otherwise private organization is not "funded by or through state or local authority" merely because public monies paid in exchange for goods provided or services rendered comprise a certain percentage of the organization's revenue. Earned fees are simply not a grant, subsidy, or funding in any reasonable, common-sense construction of those synonymous words. Rather, it is clear that, in the FOIA, *funded* means something other than an exchange of services or goods for money, even if the source of money is a governmental entity. [*Id.* at 432-433 (emphasis in original).]

The Court did not expressly distinguish between the facts before it and the facts before the *Jackson* Court.

Most recently, this Court again addressed MCL 15.232(d)(iv) in *Sclafani, supra.* The *Sclafani* Court found that "MCL 15.232(d)(iv) should be construed to mean that the organization be primarily funded by or through state or local government, regardless whether the funding came from one specific source or several." *Sclafani, supra* at 270.

### B. PLAINTIFFS' ARGUMENT

Our reading of the FOIA, together with our understanding of relevant precedent, leads us to conclude that the question whether the MHSAA is a public body subject to the FOIA can be answered after application of two separate tests. MCL 15.232(d). The first test is whether the MHSAA was "created by state or local

authority." Notwithstanding the outcome of the first question, the second inquiry is whether the MHSAA is "primarily funded by or through state or local authority." MCL 15.232(d)(iv). The latter question involves a two-pronged test. The first question is whether the disputed gate receipts come to the MHSAA "by" or "through" the schools. And, if so, the second question is whether the MHSAA is "funded" by that money, i.e., by or through a "governmental grant or subsidy," as opposed to the receipts being a fee for services. *State Defender Union, supra* at 432-433.

The trial court declined to decide plaintiffs' argument that the MHSAA fell within the definition of "public body" as a body "created by state or local authority," MCL 15.232(d)(iv). We have discretion to review this unpreserved issue on appeal because it is an issue of law regarding which all the relevant facts have been presented. *Michigan Twp Participating Plan v Federal Ins Co*, 233 Mich App 422, 435; 592 NW2d 760 (1999).

We will first address plaintiff's claim that the MHSAA is a public body for purposes of the FOIA because it was "created by state or local authority," MCL 15.232(d)(iv). Where terms are not defined, this Court may consult dictionary definitions. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). "Create" means "to cause to come into being, as something unique." *Random House Webster's College Dictionary* (1997). Any "body which is created by state or local authority" is a "public body" for purposes of the FOIA. MCL 15.232(d)(iv).

We included a rather lengthy recitation of the history of the MHSAA. We note that defendant does not dispute that it has been in existence since 1924 and

was created to oversee interscholastic sports in this state—a responsibility of various state actors and state entities during the MHSAA's entire history. However, many major events have occurred during the seventy-eight-year history of the organization. The MHSAA is now, after its incorporation in 1972, a private, not-for-profit corporation. Moreover, the state has also removed its "official" designation. Membership is voluntary and discretionary with the school districts. We find these events significant evidence that the MHSAA has changed since it was originally created, and in that time has ceased being the official athletic association for the state. Therefore, we find that the modern incarnation of the MHSAA is a unique entity that was not "created" or "cause[d] to come into being" by state or local authority. MCL 15.232(d)(iv). *Random House Webster's College Dictionary* (1997).

Second, plaintiffs argue that the MHSAA is a public body because it is "primarily funded by or through state or local authority." MCL 15.232(d)(iv). The trial court did reach this issue and, in compliance with its duty to give meaning to every word, concluded that "by or through" suggests both direct and indirect funding. *Pohutski, supra* at 684. We read "by or through" to distinguish between the different meanings of the word "authority," that is, funding "by" a governmental authority (an *entity*) and funding "through" governmental decision-making authority (the *power* to regulate). Under our reasoning, the former refers to an entity that *directly* distributes its financial resources to the disputed organization, while the latter refers to the disputed organization *indi-*

*rectly* receiving funds through some action or decision of the governmental body.

In examining whether the MHSAA is funded "by" or "through" the schools, it is necessary to examine the relationship between the schools and the MHSAA. Again, the MHSAA is a private organization organized as a nonprofit corporation. The state of Michigan disassociated itself from the MHSAA in 1995. MCL 380.11a(4). The state provides no financial resources to fund the MHSAA's activities or to support its existence as a going concern. The MHSAA hires and trains its own officials, and pays its own employees. The MHSAA sponsors tournaments at both private and public facilities. The revenue the MHSAA earns from gate receipts at its tournaments are from the sale of its own tickets, and generally go directly to the MHSAA. In cases where ticket sales are insufficient to cover the costs of certain tournaments, the MHSAA itself subsidizes those tournaments with revenues from other, profitable tournaments. The MHSAA is made up of volunteer members. The members of the MHSAA pay no dues or fees to the association. The MHSAA pays fees for use of host facilities.

The great majority of the MHSAA's revenue is derived from state championship tournaments organized and held by the MHSAA. The remainder of its revenues come from its own tournament concessions, registration fees for officials, program advertising, corporate sponsorship, and radio and television royalties from broadcasts of MHSAA tournament events. The revenues from the gate receipts come directly from the sale of the MHSAA's own tickets. In certain instances, member schools will remit to the MHSAA gate receipts collected from MHSAA tickets sold by member schools when

they     host     MHSAA-sponsored     championship
tournaments.

In either case, whether the MHSAA directly sells its
own tickets, or if the schools collect the MHSAA's tick-
ets, we do not find that the MHSAA is funded "by or
through" the schools. The MHSAA sells its own tickets
for its own events, in which member schools take
part. At best, the participating schools in select tour-
naments collect ticket revenues in what we view to
be a "limited servicing" capacity. This arrangement
does not constitute direct or indirect funding on the
part of the schools.

Moreover, under MCL 380.11a(4), the individual
schools have authority over their own interscholastic
events. See generally *Kirby v Michigan High School
Athletic Ass'n*, 459 Mich 23; 585 NW2d 290 (1998).
Thus, schools have the ability to choose to host the
events, including tournaments, themselves or to
engage the services of the MHSAA. The schools that
choose to use the services of the MHSAA in order to
have consistent rules and a centralized organizational
system do not, somehow, relinquish their decision-
making capability. These schools have no indepen-
dent authority over the MHSAA, rather the schools util-
ize the MHSAA to operate the tournaments. The MHSAA
pays a fee to host schools for facilities used, and the
MHSAA does not participate in or receive funds from
host concessions. In our view, the MHSAA does not
usurp the schools' moneymaking capacity. We see
their relationship as a mutually beneficial symbiotic
association. In other words, the schools and the
MHSAA work in tandem to achieve a mutual benefit
that neither could realize independently. For these
reasons we find that the MHSAA is not "primarily

funded by or through state or local authority" by vir-
tue of its relationship or arrangement with the
schools. MCL 15.232(d)(iv).

Because we have found that the MHSAA is not "pri-
marily funded by or through state or local authority,"
the first part of the analysis is not satisfied and thus,
the second question, whether the MHSAA is "funded" by
that money, i.e., by or through a "governmental grant
or subsidy," as opposed to the receipts being a fee for
services is moot, and we need not address the issue.
*State Defender Union, supra* at 432-433. But we will
note that the MHSAA provides services to its members
that they may not otherwise provide, or be able to
provide, for themselves.

The trial court declined to decide plaintiffs' final
argument that the MHSAA also fell within an alternative
definition of "public body": "[a] county, city, town-
ship, village, intercounty, intercity, or regional gov-
erning body, council, school district, special district,
or municipal corporation, or a board, department,
commission, council, or agency thereof." MCL
15.232(d)(iii). We have the discretion to review this
unpreserved issue on appeal because it is an issue of
law for which all the relevant facts have been
presented. *Michigan Twp Participating Plan, supra*
at 435.

On appeal, plaintiffs specifically argue that the
MHSAA is an agent of the school districts. The FOIA
does not define "agency." Again, where terms are not
defined, we may consult dictionary definitions. *Hor-
ace, supra* at 756. Black's Law Dictionary (7th ed)
defines "agency" as "a fiduciary relationship created
by express or implied contract or by law, in which
one party (the agent) may act on behalf of another

party (the principal) and bind that other party by
words or actions." Furthermore,

> [i]t is a fundamental principle of hornbook agency law that
> an agency relationship arises only where the principal "has
> the right to control the conduct of the agent with respect to
> matters entrusted to him." [*St Clair Intermediate School
> Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich
> 540, 558 n 18; 581 NW2d 707 (1998) (citations omitted).]

The school districts, each of its own accord, joined
the MHSAA in order to enjoy both collective and indi-
vidual benefits. That said, the MHSAA independently
governs itself through a body of representatives
elected from its member schools. The school districts
themselves have no control (as principals) over the
actions of the MHSAA either individually or in the
aggregate. Moreover, no one individual school or
school district can control the MHSAA, because the
MHSAA is controlled by its own board of directors.
Hence, no one school district, or even all the school
districts taken and considered as a whole, has the
ability or right to control the actions of the MHSAA.
Therefore, the MHSAA is not an agent of the school dis-
tricts and does not meet the definition of "public
body" under MCL 15.232(d)(iii).

Finally, in light of our conclusion that the MHSAA is
not a public body for purposes of the FOIA under any
of plaintiffs' arguments, plaintiffs' cross-appeal that
the trial court's order requires the MHSAA to turn over
the disputed records is moot.

Reversed.

SAWYER, P.J., concurred.

JANSEN, J. (*dissenting*). I would affirm the order
granting plaintiffs' motion for summary disposition

because the trial court properly held that defendant Michigan High School Athletic Association, Inc., (MHSAA) is a public body under subsection 2(d)(iv) of the Freedom of Information Act (FOIA), MCL 15.232(d)(iv).

At the outset, it needs to be kept in mind that the legislative policy underlying the FOIA is to require disclosure of public records by public bodies. See *Herald Co v Bay City*, 463 Mich 111, 118; 614 NW2d 873 (2000) ("Consistent with this broadly declared legislative policy, the FOIA's specific provisions generally require the full disclosure of public records in the possession of a public body."). Our Supreme Court stated in *Kent Co Deputy Sheriffs Ass'n v Kent Co Sheriff*, 463 Mich 353, 362; 616 NW2d 677 (2000), that the "FOIA provides Michigan citizens with broad rights to obtain public records, limited only by the coverage of the statute and its exemptions." Thus, our Supreme Court has described the FOIA as a "prodisclosure statute." *Herald Co, supra* at 119.

In determining whether the MHSAA is a "public body" that "is primarily funded by or through state or local authority" under MCL 15.232(d)(iv), it is important to underscore the fact that the MHSAA is the institution that regulates interscholastic high-school athletics throughout the state of Michigan. However, the tournaments that provide funding for the MHSAA could not be held without the participation of the high schools. Specifically, it is the schools, predominately public, that authorize the MHSAA to operate the tournaments, the majority of which are held in or on facilities owned by public schools, and receive the money for the tickets sold at those tournaments. In this regard, the majority's assertion that "[t]he MHSAA sells its own

tickets for its own events in which member schools take part," *Ante* at 581, is belied by the record, which indicates that it is the participating member schools that sell the tickets, remitting a substantial portion of the gate receipts to the MHSAA. Thus, it is clear that the gate receipts come to the MHSAA only through or by means of the schools' authority to regulate sporting events for their students in the first place.

In addition, it is equally clear that the MHSAA is primarily funded by the sale of tickets to these tournaments. The trial court noted that defendant admitted that the primary source of its revenues comes from gate receipts of the athletic tournaments that it sponsors. Indeed, defendant's own financial statements for July 31, 2000, indicated that $6,158,319 of its total revenue of $6,866,406—ninety percent of its revenue—came from "tournament and meet income."

Finding that the MHSAA is a "public body" for purposes of the FOIA is consistent with our prior case law. The trial court noted correctly that the instant case is clearly distinguishable from *State Defender Union v Legal Aid*, 230 Mich App 426; 584 NW2d 359 (1998), where the defendant allegedly received more than eighty-five percent of its funding from governmental sources. In *State Defender*, this Court explained that "as used in the statute, 'funded' should be construed to mean the receipt of a governmental grant or subsidy." *Id.* at 432. Thus, this Court in *State Defender* held that the defendant was not a "public body" under the FOIA "merely because public monies paid in exchange for goods provided or services rendered comprise a certain percentage of the organization's revenue." *Id.* at 433. In contrast, and consistent with what the trial court found, the MHSAA does not receive

funding from the schools in the form of fees for services rendered. Rather, the gate receipts remitted by the schools to the MHSAA are the functional equivalent of a grant or subsidy. Further, while this Court in *Kubick v Child & Family Services*, 171 Mich App 304, 308; 429 NW2d 881 (1988), "decline[d] to draw a bright line as to what percentage of funding constitutes 'primarily funded' " for purposes of the FOIA, it noted that "[f]unding that amounts to less than half the total funding of a corporation does not amount to chief, principal or primary funding." Here, virtually the entire budget of the MHSAA comes from gate receipts of the tournaments that it sponsors.

Finally, holding that the MHSAA is a "public body" under the FOIA is in accord with the United States Supreme Court decision in *Brentwood Academy v Tennessee Secondary School Athletic Ass'n*, 531 US 288; 121 S Ct 924; 148 L Ed 2d 807 (2001), and the federal district court's decision in *Communities for Equity v Michigan High School Athletic Ass'n*, 178 F Supp 2d 805 (WD Mich, 2001). The trial court pointed out that the United States Supreme Court in *Brentwood Academy* addressed a substantially identical funding arrangement used by the state of Tennessee's high school athletic association, the Tennessee Secondary School Athletic Association (TSSAA). In *Brentwood Academy*, the Court distinguished the funding arrangement from a fee-for-service arrangement as follows:

> A small portion of the Association's revenue comes from membership dues paid by the schools, and the principal part from gate receipts at tournaments among the member schools. Unlike mere public buyers of contract services, whose payments for services rendered do not convert the

service providers into public actors, . . . the schools here obtain membership in the service organization and give up sources of their own income to their collective association. The Association thus exercises the authority of the predominantly public schools to charge for admission to their games; *the Association does not receive this money from the schools, but enjoys the schools moneymaking capacity as its own.* [531 US at 299 (emphasis provided).]

After discussing the organizational structure of the TSSAA and its role in the administration of high-school athletics in Tennessee, the Supreme Court held that the TSSAA was a "state actor" under the Fourteenth Amendment. In reaching this conclusion, the Supreme Court noted: "The nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298.

More recently, Judge Enslen in *Communities for Equity* thoroughly considered the history and structure of the MHSAA before concluding that the MHSAA was a "state actor" for purposes of the Fourteenth Amendment. Relying upon *Brentwood Academy,* Judge Enslen found:

The purpose of the MHSAA—to create, establish and provide for, supervise and conduct interscholastic athletic programs throughout the state—is virtually the same as its Tennessee counterpart. The MHSAA has a membership of predominantly public schools and almost every eligible public school belongs. Its revenue is derived from gate receipts from tournaments held at member schools and broadcast fees, among other items, revenues to which schools would otherwise be entitled. The membership of the MHSAA's Representative Council includes a representative of the state superintendent of education and is comprised of mostly

> public school employees acting as representatives for their schools. Some MHSAA employees continue to be eligible for participation in the state employee retirement system. Moreover, the MHSAA exercises adjudicative power over schools with its ability to investigate and determine rules violations and resultant sanctions.
>
> Just as the Supreme Court recognized that a mechanism is required to implement interscholastic sports schedules and competition rules governing Tennessee's schools, that mechanism in the State of Michigan takes the form of public school officials acting together under the auspices of the MHSAA. [178 F Supp 2d at 847.]

In finding that the MHSAA was a "state actor," Judge Enslen further noted that while "[i]ts legal status and official designation may have changed over the years . . . the crucial question of its relationship with Michigan schools has not." *Id.* at 847.

Simply put, the majority's holding in this case that the MHSAA is not a public body subject to the disclosure provisions of the FOIA cannot be reconciled with the reasoning and results in *Brentwood Academy* and *Communities for Equity.*

Accordingly, for the reasons stated above, I would affirm the trial court's order granting plaintiffs' motion for summary disposition.