# STATE OF MICHIGAN

# COURT OF APPEALS

LEONARDO HARPER LLC,

Plaintiff-Appellant,

v

LANDMARK COMMERCIAL REAL ESTATE
SERVICES INC., JOHN KELLO, and
CLINTHARP LLC,

Defendant-Appellees.

UNPUBLISHED
March 21, 2017

No. 329338
Macomb Circuit Court
LC No. 2014-000805-CB

Before: TALBOT, C.J., and MURRAY and BOONSTRA, JJ.

PER CURIAM.

Plaintiff Leonardo Harper LLC (Harper) appeals as of right an order denying its motion for summary disposition and granting summary disposition pursuant to MCR 2.116(C)(10) to defendants Landmark Commercial Real Estate Services, Inc., John Kello, and Clintharp, LLC. For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from a real estate development deal that culminated in a property sale. Nicholas Lavdas, the owner of Harper, owned two parcels of vacant land in Clinton Township. Kello, a real estate broker with whom Lavdas had previously worked, approached Lavdas about the possibility of developing Lavdas's vacant land into a Family Dollar Store (FDS). Kello, on behalf of his employer Landmark, entered into an agreement with Lavdas. In the agreement, Landmark stated that it "represents and has procured [FDS] as a prospective tenant" for Lavdas's vacant land. The agreement also specified that in the event FDS signed a lease for the property, Lavdas agreed to pay Landmark "a leasing/brokerage commission."

Kello provided Lavdas with FDS' prototypical store plans, but Michael Gordon—Lavdas's architect for the development project—concluded that a store with FDS' prototypical layout would not fit on Lavdas's two parcels of land and that an additional parcel of land was necessary to accommodate the store. Gordon advised Kello of that fact, and Kello asked Lavdas to prepare a site plan using his two parcels of land as well as an adjacent parcel of land. Lavdas attempted to buy an adjacent parcel of land, but after months of negotiations, Lavdas was unable to acquire an adjoining parcel of land for an economically feasible price. Accordingly, Kello discussed with Lavdas a potential sale of his two parcels to another party that was interested in

-1-

entering into a lease with FDS on the property and introduced Lavdas to the interested buyer, Isam Yaldo, Clintharp's principal.

Lavdas and Clintharp entered into an agreement for the sale of Lavdas's two parcels of land and signed a purchase agreement that provided, in part, that "the intended use of the Property and other property which Buyer may acquire shall be a retail building for the operation of a Family Dollar store." The agreement also specified that "[Lavdas] shall be responsible for paying a broker commission of six percent (6%) of the gross sales price at Closing to Landmark [] who represents only [Clintharp] in this transaction." Further, pursuant to the agreement, Clintharp had 180 days to inspect the two parcels of land and the sale was to be closed 30 days after Clintharp provided written notice that it was going to purchase. During the inspection period, Clintharp sought variances from the Clinton Township Board of Appeals in order to build a store for FDS utilizing only Lavdas's two parcels of land, and Lavdas was advised that Clintharp was seeking a variance and that the variance had been approved. Clintharp eventually exercised its right under the purchase agreement, and the sale of Lavdas's two parcels of land was completed.

On March 6, 2014, plaintiff filed its complaint asserting that Kello made several material misrepresentations to plaintiff while acting as its agent "and/or fiduciary" during the real estate transactions. Plaintiff alleged that in an effort to induce plaintiff into selling the property so that Clintharp, rather than plaintiff, could secure the benefit of FDS as a lease tenant, Kello falsely represented to plaintiff that: (1) plaintiff's property was not large enough to lease to FDS, (2) plaintiff had to acquire adjacent property in order to develop an FDS store, (3) and that Clintharp intended to acquire a third parcel of land in order to develop an FDS store on plaintiff's property. Plaintiff claimed to have relied on these alleged misrepresentations when it attempted to acquire the adjacent property and agreed to sell the two parcels to Clintharp. Based on these allegations, plaintiff made claims of: fraud/misrepresentation against Landmark and Clintharp, respondent superior against Landmark, negligent supervision against Landmark, fraud in the inducement against Kello, Landmark, and Clintharp, silent fraud against Landmark and Kello, breach of fiduciary duties against Landmark and Kello, tortious interference with a business relationship or expectancy against Kello, Landmark, and Clintharp, statutory and/or common law conversion against Kello, Landmark, and Clintharp, and civil conspiracy and/or concert of action against Kello, Landmark, and Clintharp.

Defendants subsequently filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting "[t]he nexus of Plaintiff's claims is that Landmark and Kello breached their duties owed to the Plaintiff as its alleged agents by misrepresenting" certain information to plaintiff. However, defendants argued that, "Plaintiff's claims fail because Landmark and Kello were never the Plaintiff's agents." In response, plaintiff filed a motion for partial summary disposition on its fraud, breach of fiduciary duty, and tortious interference with a business expectancy claims, arguing "there is no question of fact under Michigan law that Kello was, in fact, the broker for [plaintiff] at all relevant times" and "there is no question of fact on liability for fraud." Plaintiff argued that Kello's actions clearly indicated an agency relationship existed between the parties, and pointed to documentary evidence and Kello's deposition testimony to support its contention.

The trial court held a hearing on the motions and issued a written opinion and order denying plaintiff's partial motion for summary disposition and granting summary disposition to defendants pursuant to MCR 2.116(C)(10). In its opinion, the trial court found that "there is no genuine issue of material fact that Defendant Kello was not Plaintiff's agent," so held that defendants were entitled to summary disposition on plaintiff's claims of respondent superior, negligent supervision, breach of fiduciary duties, and silent fraud, as they were "based [on] the premise that Landmark/Defendant Kello were its agent" or broker. The trial court also found that plaintiff failed to establish that Kello made the alleged misrepresentation, so granted defendants' motion for summary disposition as to plaintiff's claims for fraud/misrepresentation and fraud in the inducement. For similar reasons, the trial court found defendants were entitled to summary disposition of plaintiff's claims for tortious interference, conversion, and conspiracy and concert or action.

Plaintiff filed a motion for reconsideration asking the court to reconsider its order granting defendants' motion for summary disposition and denying plaintiff's motion for partial summary disposition, but the court entered a written opinion and order denying plaintiff's motion for reconsideration. This appeal then resulted. [1]

II. ANALYSIS

A. AGENCY

Plaintiff argues the trial court erred in concluding that there was no genuine issue of material fact regarding whether an agency relationship existed between the parties or whether Kello made the alleged misrepresentations.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Summary disposition may be granted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). To determine whether the movant was entitled to judgment as a matter of law, this Court reviews the record in the same manner as the trial court. *Morales v Auto-Owners Ins*, 458 Mich 288, 294; 582 NW2d 776 (1998). Review is limited to the evidence that had been presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake County*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Whether an implied agency exists is a factual determination. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 505; 844 NW2d 470 (2014). If the record is conflicting, the existence of an agency relationship is for a jury to decide. *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). However, "where the relationship of the parties has been defined

---

[1] On appeal, plaintiff does not challenge the trial court's denial of its motion for reconsideration.

by written agreement, it is the province of the trial judge to determine the relationship." *Birou v Thompson-Brown Co*, 67 Mich App 502, 506-507; 241 NW2d 265 (1976), citing *Keiswetter v Rubenstein*, 235 Mich 36, 42; 209 NW 154 (1926).

An agency relationship is "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions." *Breighner v Mich High Sch Athletic Ass'n*, 255 Mich App 567, 582-583; 662 NW2d 413 (2003). "[W]hether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention." *Van Pelt v Paull*, 6 Mich App 618, 623-624; 150 NW2d 185 (1967). "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account," and "[t]he test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Meretta*, 195 Mich App at 697-698; see also *Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 80; 780 NW2d 753 (2010) ("Fundamental to the existence of an agency relationship is the right of the principal to control the conduct of the agent.").

" 'An implied agency must be *an agency in fact*; found to be so by reasonable deductions, drawn from disclosed facts or circumstances.' " *AFP Specialties, Inc*, 303 Mich App at 507, quoting *Weller v Speet*, 275 Mich 655, 659; 267 NW 758 (1936). "[T]he facts and circumstances giving rise to an implied agency must be (1) known to the alleged principal, (2) within the control of the alleged principal, and (3) either explicitly acknowledged or at least acquiesced in by the alleged principal." *Id*. In determining whether an agency relationship exists, a court considers "every relation in which one person acts for or represents another by his authority." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 557; 581 NW2d 707 (1998).

Plaintiff did not present evidence sufficient to create a genuine issue of material fact that an agency relationship existed between it and defendants. First, both the commission agreement and purchase agreement clearly state that Landmark and Kello represented FDS and Clintharp. Plaintiff presented Lavdas's deposition testimony to support the contention that, notwithstanding that language, its agreement to pay Landmark a lease commission and Lavdas's personal relationship and course of dealing with Kello created an agency relationship between them. However, plaintiff presented no evidence that in seeking to facilitate the deal to develop plaintiff's land for FDS, Kello held himself out as plaintiff's agent. On the other hand, defendant presented evidence in the form of deposition testimony from Kello, that Kello held himself out as only FDS and Clintharp's agent.

Second, plaintiff provided no evidence establishing it manifested an intention to have Kello act on its behalf. In fact, the evidence submitted to the trial court supports the opposite conclusion, as plaintiff only sought Kello's assistance in determining the adjacent land owner's information in order to purchase a third parcel of land, but did not send Kello to facilitate the purchase of the land or negotiate the purchase on plaintiff's behalf. Additionally, while plaintiff asserted that Kello acted on its behalf by acting as an intermediary between it and FDS and

assisting plaintiff in its attempt to acquire an adjacent parcel of land, those actions were consistent with Kello acting as FDS' agent.[2]

Last, plaintiff offered no evidence demonstrating that it exerted control over Kello, nor is there evidence that Kello had the authority to bind plaintiff. In fact, the evidence presented to the trial court shows the contrary, as the documentary evidence demonstrates that Kello repeatedly sought plaintiff's assent to move forward and had no authority to bind plaintiff to the deal. Thus, considering the facts in a light most favorable to plaintiff, the evidence does not create a factual question regarding the existence of an agency relationship between the parties. Accordingly, the trial court did not err in granting summary disposition on plaintiff's claims of respondent superior, negligent supervision, breach of fiduciary duties, and silent fraud on that basis.

## B. FRAUD ISSUES

Both fraudulent misrepresentation and fraud in the inducement require proof that the defendant made a false representation. See *Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004) ("A claim for fraudulent misrepresentation or actionable fraud generally requires a showing" in part, that, (1) "the defendant made a material representation; [and] (2) the representation was false."); *Custom Data Sols, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006) ("To establish a fraud in the inducement, a party must show [in part] that (1) the defendant made a material representation; [and] (2) the representation was false."). Tortious interference with a business relationship requires proof of an intentional interference by the defendant, *Mino v Clio Sch Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003), and conversion requires the defendant to have wrongfully exerted domain over another's personal property, *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 447; 844 NW2d 727 (2013), aff'd and remanded sub nom *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337 (2015).

Here, plaintiff asserted that Kello falsely informed plaintiff that: (1) additional property was required in order to secure the lease with FDS, and that (2) without additional land FDS would not sign as a lease tenant on plaintiff's land. According to plaintiff, these alleged misrepresentations served as the bases of its fraud claims and constituted proof that Kello intentionally interfered with plaintiff's potential FDS lease and wrongfully exerted domain over plaintiff's property by fraudulently inducing him into the sale of the land. To support these

---

[2] Plaintiff asserts that none of the written agreements indicate that Kello was *exclusively* FDS' or Clintharps' agent, indicating Kello was acting as a dual agent. "[D]ual agency occurs when two persons or entities agree to share the services of an individual for a single act." *Vargo v Sauer*, 457 Mich 49, 69; 576 NW2d 656 (1998). While dual agency can exist, it arises "only with the knowledge and informed consent, in writing, of both the seller and the buyer." MCL 339.2517(2). Thus, while Kello was not prohibited from acting as a dual agent, he could do so only with the knowledge and informed consent of plaintiff and FDS and Clintharp. However, there was no written agreement to share Kello or Landmark's services in the development or sale of the subject property.

claims, plaintiff offered Lavdas's deposition testimony where he asserted that Kello made the misrepresentations to him. The documentary evidence presented to the trial court demonstrates that Kello provided plaintiff with FDS' prototypical plans, and indicated that, "FDS is very particular about site plan layouts." However, plaintiff offered no evidence demonstrating that Kello represented to plaintiff that FDS required any potential development to strictly comply with the prototypical specifications or that FDS was unwilling to accept a variance if proposed by the developer.

Further, the evidence presented to the trial court demonstrates that it was Gordon—rather than Kello—who concluded that plaintiff's two parcels of land were not large enough for a prototypical FDS store and determined that a third parcel of land was necessary to move forward with the development project. The record shows that Kello left the execution of the store layout and planning to plaintiff and Gordon, encouraged plaintiff to come up with a development plan utilizing just two parcels of land even after Gordon concluded they were too small, and attempted to aid in the development of the property utilizing the third parcel of land only after Gordon concluded the two parcels were insufficient for the development. Thus, the evidence shows that it was Gordon who concluded the FDS would not fit on Lavdas's two parcels of land and that a third parcel of land was required. Further, the evidence demonstrates that Kello merely parroted that conclusion in an effort to move the deal forward utilizing the development plan devised by plaintiff's architect. Accordingly, the trial court did not err in granting summary disposition on plaintiff's claims of fraudulent misrepresentation, fraudulent inducement, tortious interference, and conversion.

Plaintiff also argues the trial court erred in granting summary disposition to defendants on its silent fraud claim, as Kello was under a duty to disclose even absent an agency relationship. Generally, absent manifest injustice an issue not raised and considered before the trial court is not preserved for appeal. See *Herald Co, Inc v City of Kalamazoo*, 229 Mich App 376, 390; 581 NW2d 295 (1998); *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1993). Here, during the summary disposition proceedings plaintiff did not make the arguments it now asserts on appeal—that the Real Estate Broker's Act (REBA) and National Association of Realtors (NAR) professional rules of conduct imposed a duty of disclosure on Kello, and that Kello's alleged violation of those duties provided grounds to void the purchase agreement between plaintiff and Clintharp—and the trial court never addressed the arguments. Therefore, this issue is unpreserved and we decline to review this unpreserved issue because our review is not necessary to prevent a manifest injustice, as the trial court did not err in granting summary disposition to defendants on plaintiff's silent fraud claim.

Plaintiff also argues that the trial court abused its discretion in failing to permit plaintiff to amend its complaint. Generally, this Court reviews a trial court's decision on a motion to amend a complaint for an abuse of discretion. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014). " 'The trial court abuses its discretion when its decision results in an outcome that falls outside the range of reasonable and principled outcomes." ' *Sulaica v Rometty*, 308 Mich App 568, 589-590; 866 NW2d 838 (2014) (citation omitted).

Trial courts generally grant motions to amend a complaint. *Diem*, 307 Mich App at 216. "Except as provided in [MCR 2.118(A)(1)], a party may amend a pleading only by leave of the

-6-

court or by written consent of the adverse party." MCR 2.118(A)(2). The rule also directs that "[l]eave shall be freely given when justice so requires." *Id*. "Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons" that "include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility." *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009). A trial court "must specify its reasons for denying [a] motion" to amend a complaint, and "failure to do so requires reversal, unless amendment would be futile." *Kincaid v Flint*, 311 Mich App 76, 95; 874 NW2d 193 (2015) (citation and quotation marks omitted).

The appellant is responsible for securing and filing the transcripts of the lower court proceedings. MCR 7.210(B)(1)(a). Here, the register of actions indicates that a hearing on plaintiff's motion to amend was held on the record on July 21, 2014. Following the hearing, the trial court entered an order denying plaintiff's motion to file an amended complaint "without prejudice for the reasons stated on the record." However, plaintiff has failed to provide this Court with a transcript of the July 21, 2014 hearing, nor has a certificate been filed by the court reporter verifying that the transcript was ever ordered. Further, plaintiff did not move for less than the full transcript or stipulate with defendants to file less than the full transcript. MCR 7.210(B)(1)(c) and (d). Thus, plaintiff is in violation of MCR 7.210(B)(1)(a), "which constitutes a waiver of the issue." *Shinn v Michigan Assigned Claims Facility*, 314 Mich App 765; 887 NW2d 635 (2016), citing *People v Wilson*, 196 Mich App 604; 615, 493 NW2d 471 (1992); see also *Universal Gym Equip, Inc v Vic Tanny Intern, Inc*, 209 Mich App 511, 512; 531 NW2d 719 (1994) ("The question regarding the circuit court's denial of [plaintiff]'s motion to amend its complaint was abandoned on appeal" where plaintiff "failed to order the full transcript of proceedings" and did not "stipulate with defendants to file some portion less than the full transcript.").

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Mark T. Boonstra

-7-